**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

JEREMY MARTIN,

Plaintiff,

vs. No. CIV 14-1011 JB/GBW

CITY OF ALBUQUERQUE, a municipal corporation, and PABLO PADILLA, in his individual capacity,

Defendants.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on Defendant Pablo Padilla's Motion to Stay Proceedings, including all Deadlines set forth in the Court's Scheduling Order of January 27, 2015 [Document No. 18], Pending the Outcome of Defendant Padilla's Motion for Summary Judgment Based on Qualified Immunity [Document No. 25], filed April 10, 2015 (Doc. 27)("Motion"). The Court held a hearing on October 9, 2015. The primary issue is whether the Court should stay discovery until it resolves Padilla's Motion for Summary Judgment Based on Qualified Immunity, filed April 10, 2015 (Doc. 25)("MSJ"). Because Defendant Pablo Padilla raises the issue of qualified immunity in the MSJ, and because discovery is not essential to decide the MSJ, the Court will grant the Motion and stay discovery until the Court issues its opinion concerning Padilla's MSJ.

**FACTUAL BACKGROUND**

This case arose when Padilla initiated a traffic stop of Martin's vehicle on April 25, 2014. See Martin v. City of Albuquerque, D-202-CV-2014-06580, Complaint for Violation of Civil Rights and Tort Claims ¶¶ 7-8, at 2, filed in the County of Bernalillo, Second Judicial District

Court on October 21, 2014, filed in federal court November 6, 2014 (Doc. 1-2)("Complaint"). During the traffic stop, Martin's uncooperative behavior led Padilla to arrest him. See Complaint ¶ 18, at 3. Martin sustained several injuries as a result of the arrest. See Complaint ¶ 19, at 7.

## PROCEDURAL BACKGROUND

On November 6, 2014, Martin filed suit in the County of Bernalillo, Second Judicial District Court, State of New Mexico. See Complaint at 1. Martin alleges numerous claims, including excessive use of force in violation of the Constitution of the United States of America and 42 U.S.C. § 1983, due-process violations, failure to properly train and supervise, false arrest, and various state law tort claims. See Complaint ¶¶ 41-47, at 5; id. ¶¶ 49-59, at 6-7; id. ¶¶ 60-65, at 7-8; id. ¶¶ 66-71, at 8; id. ¶¶ 72-80, at 8-9. The City of Albuquerque removed the case to federal court on November 6, 2014. See Defendants' Notice of Removal, filed November 6, 2014 (Doc. 1).

Padilla filed the Motion on April 10, 2015. He seeks a stay until the Court decides his MSJ. He asserts that "[q]ualified immunity is not only a defense to liability but also an entitlement to immunity from suit and other demands of litigation." Motion at 2. Further, he states that, "when a dispositive motion based on qualified immunity is filed, a court has limited discretion on the issue of a stay of discovery, and should stay discovery until the court considers and determines the dispositive motion." Motion at 2. In light of case law, Padilla argues that the Court should grant a stay until it decides his MSJ on Martin's excessive-use-of-force claim in the Complaint's Count I. See Motion at 2; MSJ at 1.

Martin responded to Padilla's Motion on April 14, 2015. See Plaintiff's Response to Defendant Padilla's Motion to Stay Proceedings at 1, filed April 14, 2015 (Doc. 28)("Response"). Martin "concedes that the Tenth Circuit has directed us in most civil rights

cases to stay discovery once a defendant invokes qualified immunity as a defense." Response at 1. Martin argues that, while Padilla's MSJ is dispositive of Martin's excessive-force claim, it is not dispositive of all constitutional claims. See Response at 2. He notes that he brings several constitutional claims against Padilla which arise from the same incident. See Response at 2. Accordingly, he argues that the Court should not grant the stay.

The Court held a hearing on October 9, 2015. It largely focused on whether the Court should grant Padilla's MSJ. The parties noted that they had "acted as though there was a stay in light of the existing case law." Tr. at 52:14-16 (Martinez). See Tr. at 53:5-7 (Court: "So effectively . . . y'all have just treated this case as stayed?" Martinez: "Yes, Your Honor."); id. at 53:7 (Martinez). The parties noted they had not conducted discovery or taken any depositions. See Tr. at 53:5-14 (Court, Loman, Martinez). Despite the parties' failure to conduct any discovery, Martin argued that he opposed the stay because there are multiple claims. See Tr. at 53:17-22 (Loman). The Court stated that it would grant the Motion or, in light of the parties' treating the case as if it had been stayed, that it would not lift the stay. See Tr. at 58:18-20 (Court).

Padilla had also filed a second motion for summary judgment based on qualified immunity. See Defendant Padilla's Second Motion for Summary Judgment Based on Qualified Immunity Related to Plaintiff's Arrest, filed May 4, 2015 (Doc. 31)("Second MSJ"). At the hearing, the Court indicated that it was inclined to grant the Second MSJ because Padilla had probable cause. See Tr. at 72:11-13 (Court). The Court noted that once a police officer sees traffic violations, he has probable cause to make an arrest. See Tr. at 72:18-24 (Court). Accordingly, Martin conceded the Second MSJ and the Court granted it. See Order Granting

Defendant Padilla's Second Motion for Summary Judgment Based on Qualified Immunity Related to Plaintiff's Arrest, filed October 29, 2015 (Doc. 52).

## LAW REGARDING QUALIFIED IMMUNITY

Qualified immunity recognizes the "need to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority." Harlow v. Fitzgerald, 457 U.S. 800, 807 (1982). "Qualified immunity protects federal and state officials from liability for discretionary functions, and from 'the unwarranted demands customarily imposed upon those defending a long drawn-out lawsuit.'" Roybal v. City of Albuquerque, No. CIV 08-0181, 2009 WL 1329834, at *10 (D.N.M. April 28, 2009)(Browning, J.)(quoting Siegert v. Gilley, 500 U.S. 226, 232 (1991)). Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). Issues of qualified immunity are best resolved at the "earliest possible stage in litigation." Pearson v. Callahan, 555 U.S. 223, 232 (2009)(quoting Hunter v. Bryant, 502 U.S. 224, 227 (1991)).

Qualified immunity shields government officials from liability where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. at 231 (quoting Harlow v. Fitzgerald, 457 U.S. 818). When a defendant asserts qualified immunity at the summary-judgment stage, the responsibility shifts to the plaintiff to meet a "heavy two-part burden." Medina v. Cram, 252 F.3d 1124, 1128 (10th Cir. 2001). The plaintiff must demonstrate on the facts alleged that: (i) the defendant's actions violated his or her constitutional or statutory rights; and (ii) the right was clearly established at the time of the alleged unlawful activity. See Riggins v. Goodman, 572 F.3d 1101, 1107 (10th Cir. 2009).

In evaluating whether the right was clearly established, the court considers whether the right was sufficiently clear that a reasonable government employee in the defendant's shoes would understand that what he did violated that right. See Casey v. W. Las Vegas Indep. Sch. Dist., 473 F.3d 1323, 1327 (10th Cir. 2007). In determining whether the plaintiff has met his or her burden, the court construes the facts in the light most favorable to the plaintiff as the non-moving party. See Scott v. Harris, 550 U.S. 372, 378 (2007). A clearly established right is generally defined as a right so thoroughly developed and consistently recognized under the law of the jurisdiction as to be "indisputable" and "unquestioned." Zweibon v. Mitchell, 720 F.2d 162, 172-73 (D.C. Cir. 1983). "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." Currier v. Doran, 242 F.3d 905, 923 (10th Cir. 2001). On the other hand, the Supreme Court has observed that it is generally not necessary to find a controlling decision declaring the "very action in question . . . unlawful." Anderson v. Creighton, 483 U.S. 635, 640 (1987). "In determining whether the right was 'clearly established,' the court assesses the objective legal reasonableness of the action at the time of the alleged violation and asks whether 'the contours of the right [were] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Holland ex rel. Overdorff v. Harrington, 268 F.3d 1179, 1186 (10th Cir. 2001)(quoting Saucier v. Katz, 533 U.S. 194, 202 (2001)).

The Supreme Court of the United States of America recently revisited the proper procedure for lower courts to evaluate a qualified-immunity defense. In Pearson v. Callahan, the Supreme Court held that lower courts "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in

light of the circumstances in the particular case at hand." 555 U.S. at 236. The Supreme Court also noted in Pearson v. Callahan that, while no longer mandatory, the protocol outlined in Saucier v. Katz will often be beneficial. See 555 U.S. at 241. Once the plaintiff has established the inference that the defendant's conduct violated a clearly established constitutional right, a qualified immunity defense generally fails. See Cannon v. City & Cnty. of Denver, 998 F.2d 867, 870-71 (10th Cir. 1993).

The Supreme Court has suggested that, to avoid unnecessary exposure to burdensome discovery, the preferred practice is for the government officials to move to dismiss the action based on qualified immunity before discovery is ordered. See Crawford-El v. Britton 523 U.S. 574, 598 (1998). There are, however, exceptions to the rule that no discovery be allowed when government officials claim qualified immunity. The officials are not protected from all discovery, "'but only from discovery which is either avoidable or overly broad.'" Garrett v. Stratman, 254 F.3d 946, 953 (10th Cir. 2001)(quoting Maxey v. Fulton, 890 F.2d 279, 282 (10th Cir. 1989)). In Todd v. Montoya, No. CIV 10-0106 JB/KBM, 2011 WL 5238900 (D.N.M. Oct. 4, 2011)(Browning, J.), the Court granted in part and denied in part motions to stay discovery, allowing the plaintiff to take the deposition of one of two inmates that beat him up in prison, the conduct underlying his case. See 2011 WL 5238900, at *5. The plaintiff brought a 42 U.S.C. § 1983 claim, based on the theory that one of the prison guards retaliated against the plaintiff for an argument the two of them had by allowing two inmates to view the plaintiff's offenses on a computer screen, and that the two inmates subsequently beat up the plaintiff based on the offenses that they saw. See 2011 WL 5238900, at *1. The defendant prison guard filed his summary judgment motion a year and two months after the plaintiff filed the complaint. See 2011 WL 5238900, at *1. The Court limited the stay to allow the inmate's deposition, because

the plaintiff's theory hinged upon the prison guard showing the inmates the computer screen, or telling them of the plaintiff's offenses, and the defendant denied ever doing either action. See 2011 WL 5238900, at *4. The Court allowed the deposition to go forward, because it could be determinative of the case going forward, and did not burden any government employees or entities:

> This testimony is possib[ly] determinative of [the plaintiff]'s case, and this limited amount of discovery is narrowly crafted to get to the heart of the motion for summary judgment without allowing a lot of potentially unnecessary discovery. [The defendant] has said he did not show [the inmate witness] or [the other inmate] his computer screen, or tell them [the plaintiff]'s crimes; if [the inmate witness] says otherwise, there will likely be a genuine issue of fact requiring the Court to deny the motions and allow the parties to proceed to trial. It seems fundamentally unfair to dismiss [the plaintiff]'s case when a deposition of [the inmate witness] may make his case. Further, this deposition will not burden any government employees or entities. Accordingly, the Court finds that this limited discovery falls within the exceptions to disallowing discovery once the defense of qualified immunity has been raised. See Garrett v. [Stratman], 254 F.3d at 953 (recognizing that a discovery order in the context of qualified immunity is not immediately appealable "when the defendant's immunity claim turns at least partially on a factual question; when the district court is unable to rule on the immunity defense without further clarification of the facts; and which are narrowly tailored to uncover only those facts needed to rule on the immunity claim are neither avoidable or overly broad.").

2011 WL 5238900, at *5.

In B.T. v. Davis, 557 F. Supp. 2d 1262 (D.N.M. 2007)(Browning, J.), however, the Court denied the plaintiff's request to be permitted more discovery after the defendant raised the qualified immunity defense. See 557 F. Supp. 2d at 1287. The Court refused to allow the plaintiff to depose witnesses that the plaintiff alleged would evidence the defendants' knowledge of their alleged violation of the plaintiff's constitutional rights, because the defendant's depositions would not have affected the Court's conclusion that "the law regarding [the plaintiff]'s claims was not clearly established and that a reasonable person in the Defendants' position could have believed that their actions were lawful." 557 F. Supp. 2d at 1287.

In Herrera v. Santa Fe Public Schools, the Court granted a motion to stay discovery pending its disposition of a summary judgment motion based on qualified immunity. See 2012 WL 6846393, at *1. In that case, students at a public high school in Santa Fe, New Mexico, sued school officials, challenging on constitutional grounds a search that the officials had authorized and conducted at a school prom. See 2012 WL 6846393, at *1-3. Eighteen months after the plaintiffs filed their complaint, one defendant, the school principal, moved for summary judgment on the basis of qualified immunity; shortly thereafter, all defendants moved for a stay pending the Court's qualified immunity decision. See 2012 WL 6846393, at *1-2. The Court granted a stay of discovery: the Court explained that, although much discovery had already taken place -- including a deposition of the school principal -- qualified immunity still entitled her to protection from the burdens of suit. See 2012 WL 6846393, at *7 ("If qualified immunity is to mean anything, it must mean that public employees who are just doing their jobs are generally immune from suit." (alteration and internal quotation marks omitted)(quoting Lewis v. Tripp, 604 F.3d 1221, 1230 (10th Cir. 2010)). The Court also denied the plaintiffs' request to depose the person who wrote the code of conduct governing searches at school events, explaining that the plaintiffs had not proven that the deposition was necessary to the Court's qualified immunity decision. See Herrera v. Santa Fe Pub. Schs., 2012 WL 6846393, at *1, *8-9.

Over the Plaintiffs' opposition, the Court also stayed the case as to the other defendants. See 2012 WL 6846393, at *10. The Court explained that it was

> not unsympathetic to the Plaintiffs' arguments. There is a lot of fiction involved in the policies and the rhetoric used to support qualified immunity. In modern litigation, attorneys do most of the work for litigation, and public officials often do not know that discovery and depositions are taking place -- except as to them -- until settlement negotiations or trial is near. Public officials rarely go to depositions or, in the Court's experience, hearings. Nevertheless, the law is well established that discovery should be stayed until the Court decides the qualified immunity issue. . . . The Court cannot, without overriding the policies underlying

> the stay, say the case is stayed to [the school principal], but not anyone else. In few cases does an attorney feel comfortable not going to deposition in the case in which the attorney's client is involved. Also, a partial stay could drag the Court into endless disputes about to whom the discovery stay applies. The policy underlying a discovery stay does not only protect the public official from being personally subjected to the burdens of litigation, but it protects the public official from the attendant burdens. In Harlow v. Fitzgerald, the Supreme Court noted that the protection afforded by the discovery stay protects not only the public official being sued from being personally subjected to the burdens of the lawsuit, but also protects against broad-ranging discovery about the defendant that can result from judicial inquiry into a public official's subjective motivation for making the decision for which the official is being sued. See 457 U.S. at 817 ("Judicial inquiry into subjective motivation [when a public official is sued] [ ] may entail broad-ranging discovery and the deposing of numerous persons, including an official's professional colleagues. Inquiries of this kind can be peculiarly disruptive of effective government."). The policies that underlie a discovery stay therefore do not support a partial stay only as to discovery directed against [the school principal].

Herrera v. Santa Fe Pub. Schs., 2012 WL 6846393, at *10 (alterations in original).[1]

## LAW REGARDING STAYING DISCOVERY

A court has broad discretion in managing its docket, which includes decisions regarding issuing stays for all or part of a proceeding. See Clinton v. Jones, 520 U.S. 681, 706 (1997)("The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket." (citing Landis v. N. Am. Co., 299 U.S. 248, 254 (1936)).

[1]In Kerns v. Board of Commissioners of Bernalillo County, 2012 WL 3656469 (D.N.M. Aug. 22, 2012), the Court noted: "While the Court must faithfully follow the Tenth Circuit's decisions and opinions, the Court is troubled by this statement and the recent trend of the Supreme Court's hesitancy in § 1983 actions to address constitutional violations." 2012 WL 3656469, at *33 n.36. The Court was troubled by footnote 5 in Kerns v. Bader, 663 F.3d 1173 (10th Cir. 2011): "Neither do we doubt that the scope of the Constitution's protection for a patient's hospital records can be adequately decided in future cases where the qualified immunity overlay isn't in play (e.g., through motions to suppress wrongly seized records or claims for injunctive or declaratory relief)." 663 F.3d at 1187 n.5. The Court continues to be troubled by the current Supreme Court's and the Tenth Circuit's willingness to address constitutional violations through motions to suppress -- which rewards guilty criminal defendants -- rather than § 1983 claims -- which Congress designed to protect the civil rights of presumably innocent people. See Kerns v. Bd. of Comm'rs of Bernalillo Cnty., 2012 WL 3656469, at *33 n.36.

> [T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.

Landis v. N. Am. Co., 299 U.S. at 254-55. Recognizing that district courts must exercise moderation in issuing stays, the Supreme Court has noted that there are no strict rules for the district court to apply, because "[s]uch a formula . . . is too mechanical and narrow." Landis v. N. Am. Co., 299 U.S. at 255.

The party seeking a stay generally faces a difficult burden. See Clinton v. Jones, 520 U.S. at 708 ("The proponent of a stay bears the burden of establishing its need."); S2 Automation LLC v. Micron Tech., Inc., No. CIV 11-0884 JB/WDS, 2012 WL 3150412, at *2 (D.N.M. July 23, 2012)(Browning, J.)(citing Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc., 713 F.2d 1477, 1484 (10th Cir. 1983)). "In particular, where a movant seeks relief that would delay court proceedings by other litigants he must make a strong showing of necessity because the relief would severely affect the rights of others." Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc., 713 F.2d at 1484. "The underlying principle clearly is that 'the right to proceed in court should not be denied except under the most extreme circumstances.'" Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc., 713 F.2d at 1484 (alterations omitted)(quoting Klein v. Adams & Peck, 436 F.2d 337, 339 (2d Cir. 1971)).

The Tenth Circuit has acknowledged a district court's discretion in issuing discovery stays. In Cole v. Ruidoso Municipal Schools, 43 F.3d 1373 (10th Cir. 1994), the defendants argued "that they had an absolute right to a stay of discovery" after they filed a motion for qualified immunity and appealed to the Tenth Circuit because the district court imposed

conditions on the stay. 43 F.3d at 1386. The Tenth Circuit rebuffed the strict rules that the defendants suggested:

> As a general rule, discovery rulings are within the broad discretion of the trial court. The trial court's decision on discovery matters will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances.

Cole v. Ruidoso Mun. Sch., 43 F.3d at 1386 (citations omitted)(internal quotation marks omitted).

Whether to issue a discovery stay depends greatly on the facts and progress in each case. In S2 Automation LLC v. Micron Technology, Inc., the Court granted in part and denied in part a motion to stay discovery, to extend pretrial deadlines, to vacate the trial setting, and to issue a protective order. See 2012 WL 3150412, at *1. The Court denied the motion to the extent it requested a discovery stay, because, "[u]ltimately, a stay is unnecessary." 2012 WL 3150412, at *3. The parties had made "significant progress on the disputed matters," and the Court had "issued rulings on many of the motions that Micron Technology contended needed to be resolved before the case proceeded." 2012 WL 3150412, at *3. Instead of granting the discovery stay, the Court extended deadlines that it had previously set in the case based on the case's increasing complexity. See 2012 WL 3150412, at *3. In Walker v. THI of New Mexico at Hobbs Center, No. CIV 09-0060 JB/KBM, 2011 WL 2728326 (D.N.M. June 28, 2011)(Browning, J.), the Court evaluated whether to stay deposition discovery until thirty days after it ruled on the motions to dismiss two of the defendants, which would determine whether those defendants would remain in the suit and participate in discovery. See 2011 WL 2728326, at *1. The plaintiffs argued that the Court had already extended discovery deadlines and that issuing a stay would require rescheduling deadlines. See 2011 WL 2728326, at *1. The Court denied the motion to stay,

because it did "not see a benefit to staying discovery." See 2011 WL 2728326, at *2. The Court noted that counsel for the two defendants who were subject to the motions to dismiss had already indicated that they would not participate in deposition discovery. See 2011 WL 2728326, at *2. The Court stated: "There is thus no benefit to staying deposition discovery, and staying deposition discovery would further delay the case." 2011 WL 2728326, at *2.

## ANALYSIS

The Court will grant the Motion. Ordinarily, once a defendant files a motion for summary judgment that raises qualified immunity, the Court should stay discovery. See Mitchell v. Forsyth, 472 U.S. at 526 ("Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery."). However, "qualified immunity does not shield government officials from all discovery but only from discovery which is either avoidable or overly broad." Garrett v. Stratman, 254 F.3d at 953 (alterations omitted)(internal quotation marks omitted)(quoting Maxey v. Fulton, 890 F.2d at 282). "Thus, where the claim turns at least partially on a factual question for which the district court needs more facts to answer, courts should allow discovery, but limit the discovery to allow the plaintiff to uncover only the necessary facts to decide the immunity claim." Herrera v. Santa Fe Pub. Sch., 2012 WL 6846393, at *8. Here, there is no additional discovery that could assist the Court in resolving a factual question in the MSJ.

First, the parties have conducted enough discovery that the Court can decide the MSJ. Importantly, the parties have already disclosed the video documenting Padilla's arrest of Martin. See Lapel Camera Videotape (Padilla), filed April 10, 2015 (Doc. 25). The parties derived their arguments in the MSJ primarily from the Lapel Camera Videotape. Accordingly, additional

discovery is "avoidable or overly broad." Garrett v. Stratman, 254 F.3d at 953. In other words, the MSJ does not turn on a factual question which the Court needs more facts to answer. See Saenz v. Loving Mun. Sch. Dist., 2015 WL 1906140, *10-11 (D.N.M. April 6, 2015)(Browning, J.)(granting a stay where the Court did not need additional facts to resolve the defendant's motion to dismiss based on qualified immunity); Garrett v. Stratman, 254 F.3d at 953.

Moreover, additional evidence would not assist the parties in responding to the MSJ. Martin has already responded. See Plaintiff's Response to Defendant Padilla's Motion for Summary Judgment Based on Qualified Immunity, filed April 24, 2015 (Doc. 29)("MSJ Response"). Notably, the parties have treated the case as if the Court had stayed discovery. See Tr. at 53:5-7; id. at 53:7 (Martinez). "Once the qualified immunity defense has been raised, the Court must not let a plaintiff use discovery as a fishing expedition to flesh out the merits of his claim." B.T. Davis, 557 F. Supp. 2d 1262, 1286 (D.N.M. 2007)(Browning, J.)(citing Sawyer v. Cnty. of Creek, 908 F.2d 663, 668 (10th Cir. 1990), overruled on other grounds by Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163 (1993)). Because additional evidence would not assist the Court in deciding the MSJ, staying discovery is appropriate.

Martin also argues that the Court should stay the case against the Defendants because he has brought claims against them to which qualified immunity does not apply. See Response at 2. Martin's conclusion -- that the Court should therefore not enter a stay -- does not follow. If the Court stayed only the § 1983 claim, the stay would not mean much, if anything. The facts for many claims are the same, and proof overlaps. Padilla and/or his attorneys will attend every deposition and hearing. Herrera v. Santa Fe Pub. Schs., 2012 WL 6846393, at *10 (noting that a

party's attorneys will attend every deposition). Unless the Court stays the entire case, Padilla will not get the stay that qualified immunity law entitles him to.

**IT IS ORDERED** that Padilla's Motion to Stay Proceedings, including all Deadlines set forth in the Court's Scheduling Order of January 27, 2015 [Document No. 18], Pending the Outcome of Defendant Padilla's Motion for Summary Judgment Based on Qualified Immunity [Document No. 25], filed April 10, 2015 (Doc. 27), is granted.

UNITED STATES DISTRICT JUDGE

*Counsel:*

Eric Loman
Bregman & Loman, P.C.
Albuquerque, New Mexico

*Attorney for the Plaintiff*

Jonlyn M. Martinez
Law Office of Jonlyn M. Martinez, LLC
Albuquerque, New Mexico

*Attorney for Defendant Pablo Padilla*

-- and --

Patricia G. Williams
Wiggins, Williams & Wiggins
Albuquerque, New Mexico

*Attorney for Defendant City of Albuquerque*